UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
:
JENNIFER VUONA, SARA HUNTER HUDSON,           :
JULIA KUO, and CATHERINE WHARTON,             :
                                              :                10 Civ. 6529 (PAE)
                              Plaintiffs,     :
                -v-                           :           OPINION AND ORDER
                                              :
MERRILL LYNCH & CO., INC., MERRILL LYNCH,     :
PIERCE FENNER & SMITH, INC., and BANK OF      :
AMERICA CORP.,                                :
                                              :
                              Defendants.     :
                                              :
-----------------------------------------------------------------------X


PAUL A. ENGELMAYER, District Judge:

        This decision addresses a set of discovery disputes in this employment discrimination

lawsuit.  Plaintiffs Jennifer Vuona, Sara Hunter Hudson, Julia Kuo, and Catherine Wharton

brought this suit against defendants Merrill Lynch, Pierce, Fenner & Smith, Inc., their former

employer, and related entities Merrill Lynch & Co., Inc. and Bank of American Corporation

(collectively, "Merrill Lynch") in September 2010.  Plaintiffs allege a practice by Merrill Lynch

of providing preferential treatment to male employees over female employees; they allege that

this practice harmed their chances of success at the company, and ultimately resulted in their

termination.  Relatedly, Plaintiffs allege that Merrill Lynch impermissibly considered gender in

making termination decisions.  Plaintiffs' claims are brought under Title VII of the Civil Rights

Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, the New York State Executive Law § 290 *et

seq.*, and the Administrative Code of the City of New York § 8-101 *et seq*.

        There are currently three discovery disputes before the Court, each relating to a document

request:  (1) Plaintiffs request certain documents concerning employee trainees at Merrill Lynch;

(2) Plaintiffs request certain documents concerning complaints of discrimination against Merrill Lynch management at the branch in question; and (3) Merrill Lynch seeks leave to issue subpoenas to three former employers of the Plaintiffs, seeking Plaintiffs' employment records. For the reasons set forth herein, Plaintiffs' requests are granted in part and denied in part, and Merrill Lynch's request is denied in its entirety.

## I.   Background

As alleged in the Complaint, Plaintiffs were Financial Advisor ("FA") trainees at Merrill Lynch's Fifth Avenue Branch in Manhattan.  The FA trainee program is a two- to three-year program during which new hires are routinely evaluated based on various performance metrics. Complaint ("Cmplt.") ¶ 16.  To graduate and become a full-fledged FA, trainees must meet certain progress benchmarks during the training period.  *Id*.

Plaintiff Wharton was hired as an FA trainee in 2006; Vuona, Hudson, and Kuo were hired in 2008. *Id.* ¶¶ 11-14.  All four Plaintiffs were terminated on January 26, 2009, as part of a company-wide reduction in force ("RIF").  *Id*. ¶ 28.  There were 29 RIF-eligible FA trainees at the Fifth Avenue Branch in January 2009, of whom 13 or 14, including Plaintiffs, were terminated.  *Id*. ¶¶ 27-28.  Plaintiffs allege that all of the female FA trainees at the Fifth Avenue Branch were fired in the January 2009 RIF.  *Id*. ¶ 28.  Defendants deny this.  Answer ("Ans.") ¶ 28.  Plaintiffs further allege that male FA trainees who were not meeting progress benchmarks were nonetheless retained, Cmplt. ¶ 31, which Defendants likewise deny, Ans. ¶ 31.

Plaintiffs claim that Merrill Lynch had a practice of routinely favoring male FA trainees over female FA trainees.  Cmplt. ¶¶ 30, 35, 39, 79.  Plaintiffs allege that male FA trainees were given performance-boosting opportunities that female ones were not, such as the opportunity to work on a team with a senior FA.  *Id.* ¶ 30.  Plaintiffs argue that this unequal treatment based on

gender resulted in higher performance results for male trainees, making male trainees less likely to be terminated as part of the January 2009 RIF.  *See* Parties' Joint Letter re Discovery Disputes 1-2 (Sept. 14, 2011) ("Joint Discovery Letter").  Plaintiffs also argue that men who should have been part of the RIF based on objective performance criteria were removed from a pre-RIF list of candidates for termination (the "termination list") that had been prepared based on objective criteria, whereas women were not; and that women were added to the termination list despite higher performance profiles.  *Id*. at 3.

For its part, Merrill Lynch denies any gender-based favoritism.  It contends the RIF was a gender-neutral termination action based on objective performance criteria.  Ans. ¶¶ 79-80; Joint Discovery Letter 2.  Merrill Lynch contends that two of the Plaintiffs were selected for termination based on the computer-generated termination list that ranked the 14 lowest-performing FA trainees, based on objective performance results.  Joint Discovery Letter 2. Merrill Lynch contends that those FA trainees who were removed from the termination list, and thus retained, were not similarly situated to Plaintiffs, because these trainees had extenuating contractual or medical circumstances that justified their removal from the list; Merrill Lynch asserts that gender played no role in the decision to remove someone from the list.  *Id*. Defendants further claim that the remaining two Plaintiffs were added to the termination list, following the removal of others for unique extenuating circumstances, so as to reach the company's goal of reducing the workforce by 14 during the January 2009 RIF.  *Id*.  Merrill Lynch asserts that these two Plaintiffs were low-performing, and that its decision to add them to the termination list was based solely on objective performance criteria, not on gender.  Ans. ¶¶ 79-80; Joint Discovery Letter 2.

**II.      The Three Disputed Areas of Document Discovery**

First, Plaintiffs seek certain performance and personnel documents for 30 FA trainees

who were employed during plaintiffs' tenure at the Fifth Avenue Branch, but who were not

among the group of 29 employees who were eligible for the January 2009 RIF (of whom, as

noted, 14 were terminated).  The parties agree that Merrill Lynch has already satisfactorily

produced such documents for the 29 FA trainees who were eligible for the RIF.  As to the

remaining 30 trainees, Plaintiffs seek seven categories of documents:  (1) performance warnings,

performance evaluations, and "Performance Details" reports; (2) separation documents relating

to involuntary terminations; (3) teaming agreements; (4) Household Opportunity Reports; (5)

Length of Service rollback documents; (6) hiring documents; and (7) leave of absence

documents.  Joint Discovery Letter 3.  Merrill Lynch opposes this request, on the grounds that it

is unduly burdensome, grossly overbroad, and irrelevant to Plaintiffs' claims.  *Id.* at 7-8.

Second, Plaintiffs seek documents relating to complaints of discrimination against Merrill

Lynch management at the branch.  Specifically, Plaintiffs seek (1) complaints of gender

discrimination, from January 2006 forward, as to any manager at the branch "with

responsibilities that may have brought him or her in contact with FA trainees"; (2) complaints of

any form of unfair treatment or discrimination, not limited to gender discrimination, from

January 2006 forward, against the three key Merrill Lynch decision-makers in the January 2009

RIF; and (3) sworn statements and testimony from these three key decision-makers related to any

such complaint.  *Id.* at 11-12.  The parties represent that Merrill Lynch has already agreed to

produce complaints of gender discrimination and retaliation made against the three key decision-

makers in the branch during this time period.  *Id.* at 14.  Merrill Lynch opposes this request on

the same grounds as the first, arguing that discovery of complaints should be limited to complaints of gender discrimination against the three key decision-makers.  *Id*. at 14, 17.

Finally, Merrill Lynch seeks leave to issue subpoenas for performance-related records from three former employers of plaintiffs Vuona, Kuo, and Hudson.  *Id*. at 18.  Plaintiffs oppose this request, on the grounds that this information is irrelevant and that such subpoenas would serve no purpose other than to harass Plaintiffs.  *Id*. at 22.

## III.    Analysis

### A.    Legal Standard

Management of discovery lies within the discretion of the district court, which has "wide discretion in its handling of pre-trial discovery."  *In re DG Acquisition Corp.*, 151 F.3d 75, 79 (2d Cir. 1998) (internal citation omitted); *see also Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.*, No. 08-CV-7508, 2011 WL 3738979, at *4 (S.D.N.Y. Aug. 18, 2011).  In resolving discovery disputes, the Court is guided by the standards supplied by Federal Rule of Civil Procedure 26(b).  Under Rule 26(b)(1), the scope of discovery is broadly construed to include "any nonprivileged matter that is relevant to any party's claim or defense . . . [which is] reasonably calculated to lead to the discovery of admissible evidence."  "Relevance," in turn, is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978).  At the same time, discovery is subject to the limitations set forth in Fed. R. Civ. P. 26(b)(2), which provides, *inter alia*, that discovery should be limited where the Court determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties'

resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

In the context of employment discrimination cases, courts favor "liberal civil discovery rules," giving plaintiffs "broad access to employers' records in an effort to document their claims." *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989); *see also Chan v. NYU Downtown Hosp.*, No. 03-CV-3003, 2004 WL 1886009, at *4 (S.D.N.Y. Aug. 23, 2004) ("the imposition of unnecessary discovery limitations is to be avoided" in employment discrimination claims) (internal citation omitted). Courts have noted that, in such cases, "the scope of discovery must go beyond the specifics of the plaintiff's claim." *Chan*, 2004 WL 1886009, at *4 (citing *Louison v. Blue Cross Blue Shield of Greater New York,* 90-CV-1820, 1990 WL 108347 (S.D.N.Y. July 23, 1990) (finding records other than those pertaining to promotion and termination discoverable in a case alleging discriminatory promotion and termination)). Nevertheless, in such cases, the Court must still perform the balancing analysis directed by Rule 26(b)(2)(C)(iii), measuring the plaintiff's need for the requested materials against the burden that production would impose. *See BSN Medical, Inc. v. Parker Medical Assoc.*, No. 10-MC-15-P1, 2011 WL 197217, at *2 (S.D.N.Y. Jan. 19, 2011); *Avillan v. Digital Equip. Corp.*, No. 91-CV-8594, 1994 WL 198771, at *2 (S.D.N.Y. May 17, 1994). The party objecting to the discovery demands must, with some degree of specificity, illustrate the nature and extent of the burden of production. *See, e.g.*, *Avillan,* 1994 WL 198771, at *4.

## B.     Personnel Documents for the Remaining 30 FA Trainees

Applying these familiar principles to the first area of dispute, relating to records for the 30 FA trainees whose tenure overlapped with Plaintiffs but who were not RIF-eligible, the Court notes that the basis of Plaintiffs' lawsuit is two-fold. First, Plaintiffs contend that Merrill Lynch

did not in fact base the RIF on objective criteria, but instead impermissibly considered gender when making that round of termination decisions.  Second, Plaintiffs contend that even if the criteria on which Merrill Lynch based its termination decisions were superficially objective, in that it derived from performance data, that data in turn was tainted, because it reflected an underlying pattern of gender discrimination, under which male FA trainees were afforded greater skill-building opportunities than female FA trainees, leading to higher performance scores for men.

In assessing whether the records of the 30 non-RIF-eligible FA trainees are "reasonably calculated to lead to the discovery of admissible evidence" relating to one or both of these claims, Fed. R. Civ. P. 26(b)(1), Merrill Lynch relies on *Shumway v. United Parcel Services, Inc.* for the proposition that proper comparators in a case such as this one "must be similarly-situated in all material respects." 118 F.3d 60, 64 (2d Cir. 1997).  But the procedural posture of *Shumway*, and of *Mitchell v. Toledo Hospital*, 964 F.2d 577 (6th Cir. 1992), on which *Shumway* draws, is distinct from that here.  In those cases, an appellate court was considering not a discovery issue, but the resolution of a motion for summary judgment; the issue was whether plaintiff had established a prima facie case of discrimination.  In *Shumway*, the Second Circuit held that the proposed comparators were inapposite, because they had not been supervised by the same supervisor as had plaintiff, and had not been known to have committed the same violations of company policy as plaintiff.  *Shumway*, 118 F.3d at 64.

Here, without discovery, it is premature to predict how the principle set forth in *Shumway* will apply to the 30 non-RIF-eligible FA trainees.  The purpose of discovery here is, in part, to help identify the universe of proper comparators.  Pending discovery, the Court is not in a position to hold that those 30 persons are necessarily improper comparators.  That ultimately

may turn on such factors as by whom and how the 30 FAs were supervised within the branch, how their performance was monitored and evaluated, and whether they were subject, under comparable circumstances, to the types of employment decisions (including decisions preceding the RIF process) at Merrill Lynch.  Thus, *Shumway* does not supply a basis to categorically reject Plaintiff's request for discovery as to the 30 non-RIF-eligible trainees.

In the Court's view, the seven areas of documents which Plaintiffs seek as to these 30 persons are productively addressed in two categories.  The documents addressed in the first category are the ones the Court holds are properly discoverable.  Those in the second are not.

1. *Separation Documents, Performance Documents, Household Opportunity Reports, Teaming Agreements, and Length of Service Rollback Documents*

The decision-making process leading to the January 2009 RIF is a central issue in this lawsuit.  Plaintiffs argue that Merrill Lynch terminated higher-performing women while retaining lower-performing men.  As a result, documents relating to the separation of male and female FA trainees who were terminated outside the January 2009 RIF are reasonably calculated to lead to the discovery of evidence.  Such documents may bear on whether Merrill Lynch's termination decision-making as to FAs during the same time period at issue in this case impermissibly took gender into account.  If this were established, it might be probative evidence for a finder of fact assessing Plaintiffs' claim that their terminations, too, were gender-based. *See, e.g.*, *Mitchell v. Fishbein*, 227 F.R.D. 239, 249 (S.D.N.Y. 2005) ("evidence establishing a general pattern of discriminatory treatment by an employer  . . . is nevertheless relevant and therefore discoverable").

For the same reasons, Household Opportunity Reports for non-RIF-eligible FA trainees are discoverable.  These reports contain benchmark performance metrics for each FA, such as number of clients, assets under management, and production credits generated.  Merrill Lynch

contends that Plaintiffs were terminated because they were lower-performing, based on a set of objective metrics, than other FA trainees.  Plaintiffs contend that gender was also considered in termination decisions, and that their performance scores were lower because of an underlying pattern in which opportunities were disproportionately denied to female FA trainees.  The weight that Merrill Lynch placed on performance metrics in making termination decisions as to FAs outside of the January 2009 is relevant to both of these core contentions.  Plaintiffs are entitled to test whether these employment actions, controlling for the performance data that they seek, reflect a correlation based on gender.  *Avillan*, 1994 WL 198771, at *2 (noting importance in disparate treatment cases of "access to information that may reflect patterns of discrimination"). In the Court's view, other FAs at the branch whose tenure coincided with some or all of the time period at issue are fair comparators for the purposes of discovery.  For the same reason, performance documents for such persons, other than the Household Opportunity Reports, are discoverable.

As to the teaming agreements, these, as explained to the Court, reflect formalized professional or mentoring relationships between an FA trainee and a senior FA, in which a trainee partners with an advanced FA.  Plaintiffs allege that these relationships potentially benefitted FA trainees both qualitatively, in terms of supplying mentorship, but also, sometimes, quantitatively, by enabling the FA trainee to accrue performance credits based on assets and clients that the trainee shared with the senior, mentor FA.  Plaintiffs allege that such teaming options were differentially denied to women trainees relative to men.  In the Court's view, the teaming reports for FAs whose tenure coincided with some or all of Plaintiffs' tenure – whether or not these FAs were subject to the January 2009 RIF – is reasonably calculated to lead to the discovery of admissible evidence that is relevant to plaintiffs' claims.  Potentially, a review of

such reports would substantiate, or refute, Plaintiffs' thesis that opportunities were differentially extended based on gender, ultimately influencing the January 2009 RIF determination.

Finally, as to the Length of Service rollback documents, these, as explained to the Court, would indicate whether or not a trainee was forgiven for a leave of absence.  An unforgiven leave of absence counted against RIF-eligible FAs in the process that led to the January RIF.  For the same reasons as set forth above, these documents, as to non-RIF-eligible FA trainees, are relevant at this stage, inasmuch as they may reflect or refute Plaintiff's claim that the metrics that ultimately contributed to the termination list which formed a key determinant for the January 2009 RIFs were, in fact, not objective measures, but based at least in part on gender.

Merrill Lynch argues that producing the above-referenced documents for the 30 non-RIF-eligible FA trainees would be unduly burdensome.  A party raising a burden objection to the production of relevant documents must, with some degree of specificity, illustrate the nature and extent of the burden of production.  *See, e.g.*, *Avillan*, 1994 WL 198771, at *4.  The Court has considered Merrill Lynch's explanation of the burden on it, which is that these documents are "not maintained in one central location or by one custodian" and that the relevant materials would have to be "review[ed] and produc[ed]."  This circumstance (which as described is not unusual) is insufficient to persuade the Court that the burden on Defendants would outweigh the likely benefit of these five categories of materials to this litigation.

2.     *Hiring Documents and Leave of Absence Documents*

The Court takes a different view of the remaining two categories of material relating to the 30 non-RIF-eligible FA trainees – hiring documents and leave of absence documents.

Plaintiffs do not allege discrimination in hiring.  Quite the contrary, the Complaint alleges that Merrill Lynch was actively seeking female FAs.  Cmplt. ¶ 15.  The probative value

of such documents would be, at best, limited in this case.  Any such value would be outweighed

by the burden on Merrill Lynch of reviewing and producing documents based on FA hiring

decisions during the relevant period.

      Nor do Plaintiffs allege that Merrill Lynch had a practice of granting leaves of absence to

men more liberally than to women.  Rather, Plaintiffs allege that of those employees to whom

leaves of absence had been granted, at least one male FA trainee was given a Length of Service

rollback that saved him from termination in the January 2009 RIF, whereas no female trainee

was granted such a rollback.  Joint Discovery Letter 3.  Therefore, the discovery more reasonably

calculated to lead to information relevant to Plaintiffs' claims are the Length of Service rollback

documents for FA trainees during Plaintiffs' tenure at Merrill Lynch.  The Court has already

granted Plaintiffs' request for such discovery.  Leave of absence documents for non-party

employees may implicate privacy concerns for these persons.  Accordingly, as to such materials,

the burden imposed by production outweighs the likelihood of discovery of admissible evidence.

*See, e.g.*, *Palmer v. New York State Office of Court Admin.*, No. 07-CV-0702, 2009 WL

1118271, at *1 (N.D.N.Y. Apr. 27, 2009) ("the required production during pretrial discovery of

personnel records of non-party employees-which records invariably contain sensitive medical,

financial and other information of a highly personal nature-is not generally favored").

### C.      Complaints against Merrill Lynch Management

      Plaintiffs seek complaints of discrimination made against supervisors at the Fifth Avenue

Branch during Plaintiffs' tenure.  Defendants have previously agreed to produce complaints of

gender discrimination and retaliation, from March 2006 forward, against the three decision-

makers involved in the January 2009 RIF (Joseph Mattia, Joel Meshel, and Anna Roccanova).

As to these three decision-makers, Plaintiffs' request sweeps more broadly, seeking discovery of

complaints against the three decision-makers that raise claims other than gender discrimination; Plaintiffs also seek sworn statements and testimony pertaining to such complaints.

Plaintiffs fail to satisfactorily explain how the discovery of non-gender-based complaints (and related statements and testimony) is likely to reveal documents or information relevant to their claim.  The Court is skeptical that such complaints are, in fact, relevant to the issues at hand, and of the implicit assumption that discrimination on the basis of one protected classification is probative of a party's discrimination on the basis of another.  Consistent with this, courts have held that "[o]ther claims of discrimination against a defendant are discoverable [only] if limited to the same form of discrimination."  *Bolia v. Mercury Print Productions, Inc.*, 02-CV-6510T, 2004 WL 2526407, at *1 (W.D.N.Y. Oct. 28, 2004); *see also Zahorik v. Cornell University*, 98 F.R.D. 27, 31 (N.D.N.Y. 1983) (plaintiffs bringing gender discrimination claims may not "conduct a general 'fishing expedition' into areas unrelated to their claims such as . . . discrimination claims based on factors other than sex").  Further, having to produce documents as to types of discrimination unrelated to gender would place a production burden on Merrill Lynch that outweighs the minimal (at best) value of these materials in this case.  Plaintiffs' request for discovery pertaining to discrimination other than gender discrimination is, therefore, denied.

The Court will, however, order the production of sworn statements and testimony relating to the complaints (which Merrill Lynch has agreed to produce) of gender discrimination against the three key decision-makers at the branch.  These supporting materials are likely to assist the Plaintiffs in determining whether or not the complaints on which they are based had merit, and whether, and to what extent, the underlying conduct to which those complaints related in fact sheds light on the issues here.

Relatedly, Plaintiffs seek discovery pertaining to complaints of gender discrimination, from January 2006 forward, about other personnel at the branch – specifically, managers at the branch "with responsibilities that may have brought him or her in contact with FA trainees." Plaintiffs cite *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379 (2008), for the proposition that complaints by individuals in a plaintiff's protected class against individuals other than defendants' decision-makers are discoverable.  However, there, the Supreme Court noted that "[t]he question whether evidence of discrimination by other supervisors is relevant . . . is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case."  *Id.* at 388.

Conducting that analysis here, the Court concludes that Plaintiffs' request is too broad, and should be granted only in part.  It appears to the Court that Merrill Lynch's termination procedures (as is commonly the case) may take into account inputs, information, or feedback – direct or indirect, formal or informal – from managers other than the ultimate decision-makers as to who to terminate.  On this premise, it potentially could be quite relevant if a manager who had furnished input, information, or feedback in connection with Plaintiffs' terminations had a record of gender discrimination within the branch during the relevant period.  However, if the manager was far afield from the Plaintiffs such that he or she had no practical ability to shape the evaluation of Plaintiffs' performance, the relevance of such a record would be, at best, tenuous, and the burden of collecting and producing such materials would outweigh the benefit.

Balancing these considerations as directed by Fed. R. Civ. P. 26(b), the Court concludes that complaints of gender discrimination as to any manager at the branch who at any point from March 2006 through Plaintiffs' termination had supervisory or evaluative authority of any kind over one or more of the Plaintiffs should be produced.  Complaints as to other managers need not

13

be produced.  Not being privy to the operation of the branch and the details of how Plaintiffs were supervised and evaluated, the Court, of course, is not in a position to apply this standard concretely, or to assess how many managers at the bank (if any) apart from the three decision-makers are embraced by it.  The parties are directed to meet and confer as to the application of this standard to the facts at hand.

### D.    Subpoenas of Former Employers

The Court turns, finally, to Merrill Lynch's request to subpoena three former employers as to Plaintiffs' performance there.  Merrill Lynch argues that Plaintiffs have injected their prior job performance into the case, by asserting they were successful at other financial institutions in similar capacities prior to coming to Merrill Lynch, and thus, implicitly, that their performance at Merrill Lynch was satisfactory.

The Court is completely unconvinced that these documents are relevant to this dispute. Merrill Lynch does not deny that Plaintiffs previously worked at the institutions in question. Merrill Lynch does not claim that its decision to terminate Plaintiffs – or any employment actions it took as to them between hiring and termination – were in any way influenced by Plaintiffs' prior employment.  To the extent Merrill Lynch's argument is that (1) Plaintiffs' performance at Merrill Lynch was deficient so as to justify termination, and (2) Plaintiffs' subpar work at Merrill Lynch is corroborated by the subpar work at a prior job, that argument is not persuasive.  An employee's performance evaluations at one job and work environment may, or may not, bear on his or her success at a future job.  *See, e.g.*, *Conrod v. Bank of New York*, 97-CV-6347, 1998 WL 430546, at *2 n.4 (S.D.N.Y. July 30, 1998).

Simply put, the issue here is whether Merrill Lynch's decision-making as to Plaintiffs was based on valid considerations or whether it was influenced by gender bias.  On the record

14

before the Court, Plaintiffs' prior work histories have nothing to do with that.[1]  And any peripheral relevance the requested documents might conceivably have is decisively outweighed by the potential for harassment or reputational injury presented by a subpoena to such a former employer.

      Merrill Lynch's request to subpoena documents from Plaintiffs' prior employers is, therefore, denied in its entirety.

---

[1] Furthermore, Merrill Lynch presumably has retained and has accessible to it the data relating to Plaintiffs' prior employment that it accumulated and considered in the course of vetting and – presumably based on a positive assessment – hiring Plaintiffs.

**CONCLUSION**

For the reasons stated herein:

1.  Plaintiffs' motion as to the first category of documents is granted in part and denied in part.  Specifically, Merrill Lynch is directed to produce the following documents pertaining to the 30 non-RIF-eligible FA trainees at the Fifth Avenue Branch during plaintiffs' tenure at Merrill Lynch from October 2006 through January 2009:  (1) performance warnings, performance evaluations, and Performance Details reports; (2) separation documents for involuntary terminations; (3) teaming agreements; (4) Household Opportunity Reports; and (5) Length of Service rollback documents.  Merrill Lynch need not produce hiring documents or leave of absence documents for these persons.

2.  Plaintiffs' motion as to the second category of documents is also granted in part and denied in part.  Specifically, Merrill Lynch is directed to produce complaints of gender discrimination from January 2006 forward as to any manager at the Fifth Avenue branch who at any point from March 2006 through Plaintiffs' termination had supervisory or evaluative authority of any kind over one or more of the Plaintiffs.  Merrill Lynch need not produce complaints about gender discrimination as to any other managers.  Merrill Lynch is further directed to produce sworn testimony and statements which relate to the complaints of gender discrimination as to the three key decision-makers (Joseph Mattia, Joel Meshel, and Anna Roccanova).  Merrill Lynch is not required to produce complaints (or other documents) about forms of discrimination other than gender.

3.  Finally, Merrill Lynch's motion as to the third category of documents in question is denied in its entirety.  Defendants shall not issue subpoenas relating to Plaintiffs' employment records to the former employers of Plaintiffs Vuona, Kuo, and Hudson.

IT IS SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: November 11, 2011
       New York, New York